UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

OLACHI MEZU-NDUBUISI, an individual,

                      Plaintiff,

        v.

UNIVERSITY OF ROCHESTER, GOLISANO
CHILDREN'S HOSPITAL, DR. MICHAEL
APOSTOLAKOS, in his personal capacity
and as Chief Medical Officer of University
of Rochester, DR. JILL HALTERMAN, in
her personal capacity and as Chair of the
Department of Pediatrics, University of
Rochester, and DR. CARL D'ANGIO, in his
personal capacity and as Chair of the Division
of Neonatology, Department of Pediatrics,
University of Rochester,

                    Defendants.
_____

**DECISION AND ORDER**

6:24-CV-06387 EAW

## INTRODUCTION

Olachi Mezu-Ndubuisi ("Dr. Mezu-Ndubuisi" or "Plaintiff") sued the University of Rochester ("University"), Golisano Children's Hospital ("Hospital"), Dr. Michael Apostolakos, Dr. Jill Halterman, and Dr. Carl D'Angio (together, "Defendants") alleging she was not reappointed to the Hospital's clinical staff as a result of discrimination, retaliation, and harassment. (Dkt. 57). Defendants moved to dismiss the amended complaint. (Dkt. 38). Dr. Mezu-Ndubuisi filed opposition to that motion (Dkt. 60; Dkt. 62), and Defendants filed reply papers (Dkt. 64). As relevant here, Plaintiff moved on November 24, 2024, for a preliminary injunction seeking reinstatement to her clinical duties and an order mandating that the University renew her medical staff appointment,

and to avoid being forced to agree to a remediation plan. (Dkt. 70). Defendants filed papers in opposition on December 9, 2024. (Dkt. 75). Dr. Mezu-Ndubuisi filed reply papers on December 16, 2024. (Dkt. 82). In addition, on December 8, 2024, Dr. Mezu-Ndubuisi moved for a temporary restraining order enjoining the fair hearing until December 23, 2024. (Dkt. 74). Defendants filed opposition papers on December 18, 2024. (Dkt. 84).

On January 6, 2025, the Court issued a Decision and Order ("the Decision") that: (1) denied Dr. Mezu-Ndubuisi's motion for a preliminary injunction as unripe, without prejudice to renewal should it become ripe; (2) denied her motion for a temporary restraining order; and (3) stayed Defendants' motion to dismiss the amended complaint pending further order of the Court, in anticipation of the parties completing the fair hearing process and, if necessary, review by the New York State Public Health and Health Planning Council ("PHHPC")[1]. (Dkt. 106 at 41). Plaintiff filed a notice of appeal from the denial of her motions for a preliminary injunction and temporary restraining order on January 15, 2025. (Dkt. 110).

Pending before the Court is Dr. Mezu-Ndubuisi's motion to stay the Decision pending appeal pursuant to Fed. R. Civ. P. 62(d)[2]. (Dkt. 107). She also seeks an

---

[1]    The PHHPC was previously known as the Public Health Council ("PHC"). *See* N.Y. Pub. Health Law § 2801(6).

[2]    Plaintiff styles her motion as brought pursuant to Federal Rule of Civil Procedure 62(c), but as Defendants point out, Rule 62(c) applies to final judgments in an action for an injunction or a receivership. The Court construes and decides the motion as one brought pursuant to Fed. R. Civ. P. 62(d), which governs motions for stays pending appeal.

administrative stay pending a decision of this Court on this motion, and pending the decision of the Second Circuit should this motion be denied.  (*Id.*)  Defendants filed a response to this motion on January 29, 2025 (Dkt. 113), and Plaintiff filed a reply on February 3, 2025 (Dkt. 114).  For the reasons given below, the motion is denied.

## DISCUSSION

### I.    Stay pending appeal

"While an appeal is pending from an interlocutory order . . . that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  Fed. R. Civ. P. 62(d).  Rule 62(d) "has been narrowly interpreted to allow district courts to grant only such relief as may be necessary to preserve the status quo pending an appeal where the consent of the court of appeals has not been obtained."  *Int'l Ass'n. of Machinists & Aerospace Workers v. E. Air Lines, Inc.*, 847 F.2d 1014, 1018 (2d Cir. 1988); *N.Y. v. U.S. Dep't of Homeland Sec.*, 974 F.3d 210, 215 (2d Cir. 2020) (same).

A court applies the same four-factor test applicable to motions for a stay to motions for relief under Rule 62(d): "(1) whether the stay applicant has made a strong showing that [she] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citing Rule 62(c), which became Rule 62(d) when the Federal Rules of Civil Procedure were amended in 2018).  "The first two factors of the traditional

standard are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). "[T]he degree to which a factor must be present varies with the strength of the other factors, meaning that more of one [factor] excuses less of the other." *In Re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (internal quotation marks omitted).

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433 (citation omitted). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* (internal citation, quotation marks and brackets omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34 (citations omitted).

As a threshold matter, the Court notes that it is difficult to discern what Plaintiff seeks to accomplish with her motion. Her appeal is limited to the denial of the motions for a temporary restraining order and preliminary injunction. (Dkt. 110). Thus, even if the Court were inclined to grant the pending motion, staying the *denial* of injunctive relief would not require the Court to *grant* the desired injunctive relief. And as set out fully below, Dr. Mezu-Ndubuisi's appeal—and thus her motion for a stay—is limited to her motions for injunctive relief, and thus does not implicate the remaining holdings of the Decision.

As to the first prong, Plaintiff has not "made a strong showing that [s]he is likely to succeed on the merits." *Hilton*, 481 U.S. at 776. Despite her attacks on the Court's reasoning, Plaintiff's claim is not ripe for adjudication. (Dkt. 106 at 18-22; Dkt. 107-1 at 2-3). Plaintiff does not cite a single case to support her contention that her claim is ripe

because she was removed from clinical work, allegedly on a discriminatory basis, even though a final decision on her reappointment remains to be made. (Dkt. 107-1 at 2-3). The Court assumes familiarity with the Decision, which sets out, in detail, the steps that need to be completed before the Court may entertain a motion for an injunction reinstating her clinical privileges. (Dkt. 106 at 18-22). The decision as to whether she will be returned to clinical work remains an open one, and New York law makes patently clear that a physician seeking an order restoring staff privileges must first bring her claims to the PHHPC. *See Gelbard v. Genesee Hosp.*, 87 N.Y.2d 691, 696 (1996) (to obtain injunctive relief requiring the restoration of terminated staff privileges, New York Public Health Law § 2801-b(c) requires that "[f]irst, the physician must submit a complaint to the [PHHPC]"); *see also Johnson v. Nyack Hosp.*, 964 F.2d 116, 121 (2d Cir. 1992) (noting that under New York law, "[a] physician who wants [her] privileges restored must first file a complaint with the [PHHPC] prior to seeking redress in the courts").

Dr. Mezu-Ndubuisi's arguments that she is likely to succeed on the merits are unpersuasive. She argues that "the factual record overwhelmingly show[s] Defendants removed her indefinitely from clinical work and have refused to renew her clinical privileges as medical staff wholly or significantly because of her race," and Defendants "are unable to articulate any credible non-racist reason for their fact-free reentry ultimatum." (Dkt. 114 at 5). Plaintiff's assertion is incorrect: Defendants deny their actions are discriminatory, and moved to dismiss Plaintiff's amended complaint, in relevant part, on the ground that Plaintiff failed to allege facts that would give rise to an inference of discrimination. (Dkt. 38-1 at 26). As explained fully in the Decision, on the current

record, Plaintiff failed to establish she is likely to prevail on the merits of her Title VII claim. (Dkt. 106 at 26).

To the extent that Plaintiff is arguing she should not have to participate in the fair hearing process because it is biased against her (Dkt. 114 at 4), again, those claims are premature. Allegations "of [] bias or prejudgment based on ex parte communications are insufficient for injunctive relief and cannot be reviewed until . . . [there is] an adverse determination and an appeal has been taken raising these claims on the record as a whole." *Touche Ross & Co. v. S.E.C.*, 609 F.2d 570, 575 (2d Cir. 1979). "Requiring exhaustion before the allegedly biased tribunal not only will give the tribunal the opportunity to purge itself of bias, if any, but also will provide a foundation for further review of the dispute either with respect to the alleged bias or on its merits." *MFS Sec. Corp. v. S.E.C.*, 380 F.3d 611, 623 (2d Cir. 2004).[3] Neither the fact that the fair hearing presider is to be paid by the Hospital, nor the fact that the Hospital and presider conferred regarding a few administrative matters, suffices to raise an inference of unfairness and partiality. (Dkt. 106 at 26-27).

Plaintiff also challenges the Court's finding that she failed to establish irreparable harm. (Dkt. 107-1 at 3). She argues that she brought her suit and sought an injunction

---

[3]     As noted in the Decision, any challenge to the process employed by the Hospital must be undertaken via an Article 78 proceeding after exhausting the administrative remedies provided by the Hospital. *See Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) ("[A] university faculty member's 'claims based upon the rights or procedures found in college manuals, bylaws and handbooks may only be reviewed by way of a special proceeding under Article 78.'") (quoting *Bickerstaff v. Vassar Coll.*, 354 F. Supp. 2d 276, 283 (S.D.N.Y. 2004), *aff'd*, 160 Fed. App'x 61 (2d Cir. 2005)); *Koul v. Univ. of Rochester*, 285 F. Supp. 3d 595, 601 (W.D.N.Y. 2018) (same) (collecting cases).

close in time to when she received her right-to-sue letter from the EEOC, and shortly after the final attempts at reconciliation broke down. (*Id.*). Plaintiff ignores that she did not need a right-to-sue letter to obtain injunctive relief, at least on a temporary basis. "[T]emporary injunctive relief is available on Title VII claims before a plaintiff receives a right-to-sue letter from the EEOC." *Sughrim v. N.Y.*, 503 F. Supp. 3d 68, 96 (S.D.N.Y. 2020); *see also Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 884-87 (2d Cir. 1982) ("[W]here a person has filed a Title VII charge with the EEOC, the court has jurisdiction to entertain a motion for temporary injunctive relief against employer retaliation while the charge is pending before the EEOC and before the EEOC has issued a right to sue letter."). Here, Dr. Mezu-Ndubuisi filed her complaint with the EEOC on December 19, 2023. (Dkt. 19 at ¶ 98). From that point on, she was free to seek injunctive relief, but did not do so until June 20, 2024. (Dkt. 2).

Finally, the Court was not obligated to hold a hearing prior to issuing the Decision. "[T]here is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it." *Redac Project 6426, Inc. v. Allstate Ins. Co.*, 402 F.2d 789, 790 (2d Cir. 1968); *see also Clark v. Childs*, 416 F. Supp. 3d 221, 222 (E.D.N.Y. 2017) ("[E]videntiary hearings on motions for temporary restraining orders and preliminary injunctions are not required."). Plaintiff's argument also elides the fact that the Court held a hearing on her first motion for a preliminary injunction (Dkt. 39), and that both the first and second motions for injunctive relief were fully briefed by the parties. *See, e.g., Drywall Tapers & Pointers of Greater N.Y., Local 1974 v. Local 530*, 954 F.2d 69, 76-77 (2d Cir.

1992) (evidentiary hearing not required where the "prior hearings and affidavits . . . provide[ ] an adequate basis for the court's decision").

As Dr. Mezu-Ndubuisi failed to show the Court committed error in its Decision, she cannot make out the necessary "strong showing that [s]he is likely to succeed on the merits" of her appeal. *Hilton*, 481 U.S. at 776. That alone is basis enough to deny Plaintiff's motion for an injunction pending appeal. *See Nken*, 556 U.S. at 434 (showing of likelihood of success is "critical"). The Court nonetheless addresses the other factors of the test for the sake of completeness.

Turning to the second stay factor, Plaintiff cannot establish she will suffer irreparable harm absent a stay pending appeal. Plaintiff does not cite to any case law that undermines the Court's earlier finding that if she ultimately prevails, she can be fully compensated for any harm with an award of money damages. (Dkt. 106 at 23-24). It is well-established that if "there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005). "[T]he law is clear that a discharge from employment and the injuries that may flow therefrom (*e.g.,* lost income, damage to reputation, and difficulty finding future employment) do not constitute the irreparable harm necessary to obtain a preliminary injunction." *Peck v. Montefiore Med. Ctr.*, 987 F. Supp. 2d 405, 412 (S.D.N.Y. 2013) (collecting cases). Plaintiff offers no evidence to support her claim that calculating damages should she prevail would be "complex without any recognized methodology." (Dkt. 107-1 at 11). Again, the law is clear that losing a job, without much more, is not an irreparable injury. *See, e.g., Moore*,

- 8 -

409 F.3d at 511 (negative employment performance evaluation that caused plaintiff to fear termination of employment was not an irreparable injury for purposes of preliminary injunction because termination of employment was insufficient to establish irreparable harm); *Chapman v. S. Buffalo Ry. Co.*, 43 F. Supp. 2d 312, 318 (W.D.N.Y. 1999) ("In essence, the plaintiff must quite literally find himself being forced into the streets or facing the spectre of bankruptcy before a court can enter a finding of irreparable harm."). Plaintiff offers no explanation for why any loss she suffers would be difficult to quantify, as opposed to the legion of Title VII cases where the juries and judges are able to put a dollar figure on the damages suffered by plaintiffs.

As to the last two prongs, Plaintiff also must demonstrate that (1) Defendants will not suffer any injury if a stay is issued; and (2) that the public interest favors a stay. *Hilton*, 481 U.S. at 776. As to the first, Plaintiff contends that "[p]utting Defendants' faux Fair Hearing process on hold does not compromise their ability to defend." (Dkt. 107-1 at 12). The Court finds this contention puzzling, as the Decision did not order the parties to proceed with the fair hearing process (although it does assume the parties will do so) and staying the Court's denial of the motions will neither stay those proceedings nor force them to proceed. As to the public interest prong, Dr. Mezu-Ndubuisi argues that "[g]ranting a stay would signal to the public and the medical profession that racial discrimination claims are taken seriously by the judicial department." (Dkt. 107-1 at 13). Again, the Court is perplexed by this argument because a stay would not change the status quo in the least: as explained above, staying the denial of the motions for injunctive relief would not result in the issuance of injunctive relief. Plaintiff concedes as much, noting that "[s]ince the stay

would still leave Plaintiff outside the NICU, there would be no plausible claim of a patient safety issue." (*Id.*). Neither of these prongs weigh in favor of a stay pending appeal.

Having failed to make the necessary showing, Plaintiff's motion for a stay pending appeal is denied.

## II.    Primary jurisdiction doctrine

Plaintiff also raises several arguments regarding the Court's invocation of the primary jurisdiction doctrine. (Dkt. 107-1 at 8-10). None of those points support a stay pending appeal because even if Plaintiff's attacks on the Court's reasoning are correct, that portion of the Decision is not part of Plaintiff's appeal. An appellant's "notice of appeal must . . . designate the judgment—or the appealable order— from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B). This "requirement for specificity in a notice of appeal refers to the relief granted or denied" by the district court, *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 445 (2d Cir. 2005), and the designations made in the notice of appeal define the scope of the appellate court's jurisdiction, *Sheng v. M&TBank Corp.*, 848 F.3d 78, 88 (2d Cir. 2017); *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 134 (2d Cir. 2016).

In *Sheng*, the plaintiff brought federal and state-law claims of disability discrimination. 848 F.3d at 87-88. The district court dismissed, as a matter of law, claims brought pursuant the New York State Human Rights Law ("NYSHRL"). *Id.* After the jury found in favor of the defendant on the remaining claims, plaintiff filed a notice of appeal stating that the appeal was taken "from the jury verdict entered in th[e] action." *Id.* at 88. The Second Circuit held that the appeal did not encompass the dismissal of the NYSHRL

claims. *See id.* In *Kovaco*, the notice of appeal stated that appellant appealed from an order

granting summary judgment on his claims of discrimination under three statutes listed in

the notice, and the Second Circuit held it lacked jurisdiction to consider the appeal of a

claim brought under a fourth statute not mentioned in the notice. 834 F.3d at 134-35.

Here, Plaintiff's notice of appeal states that she "appeals . . . from an Order denying

Plaintiffs [sic] motions for a preliminary injunction and temporary restraining order entered

on the 6th day of January 2025." (Dkt. 110 at 1). Thus, the appeal was not taken from the

Decision's invocation of the primary jurisdiction doctrine to stay the litigation. Moreover,

even if Plaintiff attempted to appeal from the primary jurisdiction doctrine holding, it is

doubtful that an appeal could be taken from an interlocutory order. *See, e.g., Beach TV*

*Cable Co., Inc. v. Comcast of Fla./Ga., LLC*, 808 F.3d 1284, 1290 (11th Cir. 2015) (joining

other Circuits in holding that "application of the primary jurisdiction doctrine leading to a

stay while matters are referred to a federal administrative agency is not a determination

completely separate from the merits of the action" and thus does not fall within the

collateral order doctrine); *Crystal Clear Commc'ns Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171,

1180 (10th Cir. 2005) ("A district court's determination of whether to invoke the primary

jurisdiction doctrine is not sufficiently separable from the cause of action to qualify for

interlocutory review.").

The primary jurisdiction doctrine allows the Court to avail itself of the expertise of

the PHHPC, which would aid the Court in determining whether a thorough medical

investigation of the medical care provided by Plaintiff was undertaken and whether the

investigation truly related to patient care concerns. The stay imposed by the Decision in

no way prohibits the parties from completing the Hospital's fair hearing process and, if necessary, applying to the PHHPC for relief from the Hospital's decision.  The entire point of imposing a stay is to provide "plaintiff a reasonable opportunity within which to apply to the [agency] for a ruling," *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 505 (2d Cir. 2022), without running afoul of the statute of limitations.  As the Court is looking to any potential ruling from the PHHPC to aid it in understanding whether the Hospital is fairly questioning Plaintiff's medical competency, the Court reiterates that the parties are to submit status letters at the completion of the Hospital's review process.  At that time, the parties may address the issue of whether continuing the stay is appropriate if it appears the Court's objectives will not be served by waiting for PHHPC review, or for any other colorable ground.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for a stay pending appeal (Dkt. 107) is denied.  The Court also denies Plaintiff's request that it enter an administrative stay so that Plaintiff may move in the U.S. Court of Appeals for a stay pending appeal.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      March 13, 2025
            Rochester, New York